IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAMUEL MYLES,                                               OPINION AND ORDER

       Plaintiff,                                              14-cv-661-bbc

  v.

RAVI GUPTA and
UNITED STATES,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Samuel Myles, a prisoner incarcerated at the Federal Correctional Institution in Milan, Michigan, has filed this pro se lawsuit against defendants Ravi Gupta and the United States. Plaintiff alleges that while he was confined at the Federal Correctional Institution in Oxford, Wisconsin, defendant Gupta violated his Eighth Amendment rights and the Federal Tort Claims Act by prescribing a combination of blood pressure drugs that caused plaintiff to faint and break his ankle. Two motions are pending: plaintiff's motion for the appointment of counsel and defendants' motion for summary judgment.

      I am granting defendants' motion for summary judgment and denying plaintiff's motion for the appointment of counsel. Defendants have set forth undisputed evidence establishing that neither Dr. Gupta nor any federal agent breached the applicable standard of care by prescribing the combination of drugs plaintiff received. Moreover, it is clear that defendant Gupta's efforts to monitor plaintiff's blood pressure fell within the governing

1

standard of care as well. Plaintiff's request for counsel must be denied because he is not proceeding in this case in forma pauperis and therefore is not entitled to assistance with the recruitment of counsel under the standard set forth in 28 U.S.C. § 1915(e)(1). The benefits associated with § 1915(e)(1) cannot be extended to litigants such as plaintiff who have a history of filing lawsuits that are either frivolous or that fail to state a claim.

From the parties' summary judgment materials and the record, I find that the following facts are material and not subject to genuine dispute.

ALLEGATIONS OF FACT

While plaintiff was incarcerated at FCI-Oxford in Oxford, Wisconsin, plaintiff's primary care provider was defendant Dr. Ravi Gupta. Defendant Gupta first saw plaintiff on November 10, 2011 at FCI-Oxford's health services unit. The primary condition for which Gupta was treating plaintiff on that date was hypertension, a problem that had been diagnosed at least ten years prior to plaintiff's incarceration at FCI-Oxford. At the time of Gupta's initial examination of plaintiff on November 10, 2011, plaintiff was taking Aspirin and two hypertension drugs—Amlodipine and Triamterene—to treat his high blood pressure. On November 10, 2011, plaintiff's blood pressure was within normal limits, so Gupta decided to continue plaintiff on those same drugs.

Plaintiff was examined by the health services unit on at least seven occasions between January 12, 2012 and June 8, 2012. Plaintiff's blood pressure varied over this six month period. Although it was generally within the normal range, it exceeded normal limits on May

2

23, 2012 and June 8, 2012. Then on June 15, 2012, Judith Spahn, an advanced nurse practitioner, took plaintiff's blood pressure and noticed that it was 143/93, which was the highest it had been measured. Spahn decided that additional treatment was warranted to bring plaintiff's blood pressure within a normal range. Spahn decided to prescribe plaintiff Lisinopril, which is an ACE inhibitor hypertension drug. This drug would be taken in addition to the Amlodipine and Triamterene plaintiff was already taking. Amlodipine, Triamterene and Lisinopril are three hypertension drugs that can be, and frequently are, prescribed together to treat hypertension. Such a regimen is consistent with the national guidelines for treating hypertension. Moreover, there are no contraindications between Amlodipine, Triamterene and Lisinopril. Plaintiff received a 30-day supply of Lisinopril on June 18, 2012.

Plaintiff went to the blood pressure clinic on June 20, 2012 and his blood pressure was 132/88, which was within normal limits as established by national guidelines for the treatment of hypertension. He saw defendant Gupta the following week. Plaintiff reported no problems and informed Gupta that he had been taking his medications as ordered. On the day plaintiff saw Gupta, his blood pressure was 122/84, which was the lowest it had been since plaintiff first started seeing Gupta. Gupta renewed plaintiff's Amlodipine, Triamterene, Lisinopril and Aspirin prescriptions. Plaintiff requested and picked up his 30-day refills of these prescriptions on July 11, August 9 and September 7, 2012.

On October 4, 2012, a unit officer discovered that plaintiff had saved a large number of his hypertension pills in his locker. The officer brought the issue to the health services

unit's attention. Brad Malcolm, a health services nurse, called plaintiff to the health services unit. Plaintiff told Malcolm that he was taking the medications as they were prescribed, but that he received new prescription orders and refills before finishing old supplies of pills. However, plaintiff's medication dispensing history did not support plaintiff's explanation.

Malcolm discussed the issue with defendant Gupta and Health Services Administrator Cesar Lopez. The health services staff was unable to determine what medications plaintiff had taken and when he had taken them. Malcolm, Gupta and Lopez decided that plaintiff would be placed on pill line for each medication to ensure his compliance. He would then be reevaluated after 30 days. Gupta issued the medication orders on October 4, 2012 and Malcolm entered them into the system. The orders were for the same medications in the same dosages that plaintiff had received previously; the only difference was that they would be distributed to plaintiff daily on the pill line to ensure adherence.

The following day, October 5, 2012, health services staff dispensed to plaintiff Amlodipine, Triamterene, Lisinopril and Aspirin, as prescribed by Gupta. Plaintiff ingested the medications on the pill line. Plaintiff received the same prescriptions in the same doses again on October 6, October 7 and October 8, 2012. At no point between when he was first administered his prescriptions on the pill line on October 5 and when he received them on October 8, did plaintiff complain about his medications or indicate that he was experiencing any side effects.

After receiving his prescriptions on October 8 at 7:30 a.m., plaintiff went back to his cell and slept. However, when he woke, he asked his unit officer to call for medical assistance

because he felt woozy. Plaintiff then turned and fell. Nurse Malcolm arrived at plaintiff's cell and noted that plaintiff was alert, but confused about what had happened. Malcolm brought plaintiff to the health services unit to monitor his vital signs. He was given oxygen and a saline IV. While in the health services unit, plaintiff began to complain of pain in his left ankle. Malcolm wrapped plaintiff's ankle with an ace bandage and gave plaintiff crutches; he instructed plaintiff not to place any weight on his ankle until the symptoms resolved. After plaintiff's fall, Gupta discontinued plaintiff's Lisinopril and Triamterene prescriptions.

OPINION

A. Request for Assistance in Recruiting Counsel

A threshold issue that must be resolved before addressing the merits of defendants' motion for summary judgment is plaintiff's latest request for assistance with the recruitment of counsel. After considering plaintiff's history of filing frivolous litigation, the fact that plaintiff is not proceeding in forma pauperis and the nature of the issues in dispute at this stage of the case, I am denying plaintiff's request.

Plaintiff has requested assistance with the recruitment of counsel because he contends that he is incapable of litigating this case on his own. However, this court's authority to provide such assistance is derived from 28 U.S.C. § 1915(e)(1), which applies only to proceedings brought in forma pauperis. Plaintiff's right to proceed in forma pauperis was revoked on January 19, 2016 after the court discovered that plaintiff has filed over a dozen pro se civil lawsuits and appeals, at least five of which were dismissed as frivolous or for

failing to state a claim. Because plaintiff can no longer proceed in forma pauperis under § 1915, he also cannot avail himself of the various benefits of that statute, including the right to assistance with the recruitment of counsel when the complexity of a case is beyond his abilities. Extending the benefits associated with § 1915(e)(1) to litigants that cannot proceed in forma pauperis would thus contradict the text of § 1915. Additionally, assisting plaintiff with the recruitment of counsel under § 1915(e)(1) would undermine one of the goals of the Prison Litigation Reform Act: deterring frivolous prisoner litigation by imposing economic costs on prisoners who file civil claims. Although the Seventh Circuit has not addressed the issue, at least two other courts of appeals have held that the right to assistance with the recruitment of counsel set forth in § 1915(e)(1) does not extend to litigants whose history of filing suits that are frivolous or fail to state a claim precludes them from proceeding in forma pauperis. Brightwell v. Lehman, 637 F.3d 187, 192 (3d Cir. 2011) ("Allowing a litigant who was denied in forma pauperis status pursuant to § 1915(g) to obtain counsel under § 1915(e)(1) would thus contradict both the text of § 1915 and the principal purpose of the PLRA"); Mills v. Fischer, 645 F.3d 176, 178 (2d Cir. 2011) ("[A] litigant barred from proceeding under § 1915 is likewise ineligible for the benefits provided therein, such as appointment of counsel.").

Moreover, even if I were to assist plaintiff with the recruitment of counsel under § 1915(e)(1), I am convinced that doing so would have little effect on the outcome of this case. Defendants have responded to plaintiff's claims on summary judgment by setting forth a substantial amount of evidence that their conduct was consistent with both the governing

6

standard of care and well-recognized medical guidelines for the treatment of plaintiff's hypertension condition. I have reviewed all of defendants' proffered evidence and expert testimony in the light most favorable to plaintiff while keeping in mind the fact that plaintiff is unrepresented. This is not a case in which there are obvious, unexplained holes in defendants' case that could readily be identified with the assistance of counsel. Nor is this a case in which judgment must be entered for defendants despite their having presented feeble evidence that is credited only because plaintiff has failed (or was unable) to gain access to rebuttal evidence.

.

### B. Merits

1. Federal Tort Claims Act claim against United States

Plaintiff claims that the government may be held liable under the Federal Tort Claims Act for negligently prescribing a combination of hypertension drugs that caused him to fall and break his ankle and for failing to monitor his blood pressure properly. The Federal Tort Claims Act authorizes suits against the United States for claims involving "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Liability under the Act is determined by applying the law of the place where the wrongful act or omission occurred. Plaintiff was injured while incarcerated at FCI-Oxford in Wisconsin, so Wisconsin negligence law governs his claim under the Tort Claims Act.

7

In Wisconsin, a plaintiff alleging common-law negligence must establish: (1) that the defendant owed plaintiff a duty of care; (2) defendant breached that duty; (3) the defendant's breach caused plaintiff's injury; and (4) plaintiff's injury resulted in actual loss or damages. Gil v. Reed, 381 F.3d 649, 658-59 (7th Cir. 2004) (citing Paul v. Skemp, 242 Wis. 2d 507, 625 N.W.2d 860, 865 (2001)). To defeat defendants' motion for summary judgment, plaintiff must show that there is a genuine issue of material fact as to each of these elements. Harney v. Speedway SuperAmerica, LLC, 526 F.3d 1099, 1103-04 (7th Cir. 2008). I agree with defendants that plaintiff has failed to identify a genuine issue of material fact with respect to the second and third elements of Wisconsin's four-part test for proving medical negligence.

Plaintiff's entire claim is premised on his unsubstantiated assertion that he fainted and was injured because he took the medications defendants prescribed. However, the fact that plaintiff fainted hours after ingesting Amlodipine, Triamterene and Lisinopril does not establish that these drugs caused plaintiff to faint. Furthermore, even if these drugs did cause him to faint, plaintiff has failed to demonstrate that prescribing the drugs together violated the applicable standard of care. Under Wisconsin law, medical providers are not deemed negligent simply because their treatment decisions result in an adverse event. Nowatske v. Osterloh, 198 Wis. 2d 419, 543 N.W.2d 265, 274-75 (1996); Kuehnemann v. Boyd, 193 Wis. 588, 592-93, 214 N.W. 326 (1927) ("we see no reason why proof of a bad result should constitute proof of negligence on the part of the physician"); Francois v. Mokrohisky, 67 Wis.2d 196, 201, 226 N.W.2d 470 (1975) (medicine "is not an exact

science, and even the very best [physicians] can be wrong in diagnosis or procedure"). Instead, litigants claiming negligence must demonstrate that the adverse event was attributable to conduct that fell below the governing standard of care.

Defendants rely primarily on the expert testimony of John M. Dopp, Pharm. D., an associate professor at the University of Wisconsin School of Pharmacy, to demonstrate that defendants' treatment decisions fell within the applicable standard of care. Dopp notes that under the current guidelines established by both the Joint National Committee on Prevention, Detection, Evaluation and Treatment of High Blood Pressure and the International Society of Hypertension, when a patient's blood pressure exceeds the normal range despite his having been prescribed two hypertension medications, providers may prescribe Lisinopril (or a drug in the same class) as an "add-on therapy." According to Dobbs, providers regularly follow these guidelines and often prescribe three different prescriptions to patients in plaintiff's situation. Finally, Dobbs states that the three drugs plaintiff was prescribed are not contraindicated and were all prescribed in appropriate doses. Consistent with Dobbs' testimony, the prison's health service staff members have averred that they have prescribed multiple prisoners the same medications plaintiff was prescribed without any incidents in the past.

Further, Dobbs and the health service staff provide evidence that plaintiff's blood pressure was monitored regularly and in accordance with the standard of care. Plaintiff's medical records indicate that his blood pressure was monitored approximately once every two weeks until it fell within a normal range. After plaintiff was prescribed the third

medication (Lisinopril), his blood pressure was checked twice over the following two weeks and deemed normal. Dobbs testifies in his report that the standard of care would have also required that it be checked within two to four weeks after his medication regimen was renewed on October 4, 2012 following the discovery that plaintiff was hoarding his medications. However, plaintiff's fall occurred only four days after that change in plaintiff's treatment. Accordingly, defendant's failure to check plaintiff's blood pressure prior to plaintiff's fall was not a violation of the standard of care.

Plaintiff does not cite any evidence or provide any argument to rebut the evidence set forth by defendants demonstrating that defendants' conduct comports with the standard of care. The only arguments plaintiff makes in his opposition brief relate to defendant Gupta's statements at his deposition that he did not treat plaintiff's broken ankle. However, the treatment of plaintiff's broken ankle is not at issue in this case; all that is at issue is how plaintiff's blood pressure was monitored and treated. To rebut defendants' evidence, plaintiff would need to show that the medications defendants prescribed and the monitoring of plaintiff's blood pressure fell below the standard of care. Plaintiff offers no evidence or argument directed at this issue. Accordingly, defendants are entitled to summary judgment on plaintiff's claim under the Federal Tort Claims Act that they were negligent by prescribing plaintiff three hypertension drugs.

In light of this holding, it is not necessary to address defendants' argument that plaintiff was contributorily negligent by misrepresenting that he was taking his medications as prescribed and by failing to inform prison medical staff about any adverse reactions he

was having to the medications.

2. Eighth Amendment claim against Defendant Gupta

Plaintiff also contends that defendant Gupta violated his Eighth Amendment rights by providing him inadequate medical care. To prevail on such a claim, plaintiff must show that a prison official was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Gupta does not dispute that plaintiff's hypertension and the management of his blood pressure constituted a "serious medical need." However, he denies that he was deliberately indifferent to plaintiff's medical needs.

To establish deliberate indifference, plaintiff must show that Gupta was both aware of plaintiff's medical conditions and either ignored those conditions or prescribed a course of treatment that was blatantly inappropriate. Greeno v. Daley, 414 F.3d 645, 653-54 (7th Cir. 2005). Undoubtedly, defendant was aware of plaintiff's hypertensive condition. However, no reasonable jury could find that Gupta ignored this condition or prescribed blatantly inappropriate treatment. The undisputed facts establish that Gupta monitored plaintiff's blood pressure on a regular basis, prescribed hypertension drugs, consulted with the prison's health services unit and medical staff after they discovered plaintiff was hoarding his medications and ordered that plaintiff's medications be dispensed on the pill line. These facts make it clear that plaintiff's condition was not ignored. Moreover, as explained above, defendants' actions were consistent with the standard of care for patients with hypertension. Therefore, Gupta's treatment was not "blatantly inappropriate" or even negligent.

11

Accordingly, plaintiff's Eighth Amendment claim against defendant Gupta must be dismissed. In light of this holding, it is not necessary to address defendant Gupta's alternative argument that he is entitled to qualified immunity.

ORDER

IT IS ORDERED that

    1. Plaintiff Samuel Haywood Myles's motion for assistance in recruiting counsel, dkt. #122, is DENIED.

    2. The motion for summary judgment filed by defendants the United States and Ravi Gupta, dkt. #104, is GRANTED.

    3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

    Entered this 22d day of April, 2016.

                                         BY THE COURT:

                                         /s/

                                         _____
                                         BARBARA B. CRABB
                                         District Judge